IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Benjamin Heyward, #165514, ) | Civil Action No. 6:10-1112-JFA-KFM |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Warden McKither Bodison, ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

### *Underlying Facts*

On March 29, 1997, Keisha Middleton left her boyfriend's house between 11:00 and 11:30 p.m. to meet some friends (App. 92). En route, she received a page from her boyfriend and stopped at the nearest pay phone to return his page (App. 92-93). The area was dimly lit, causing Middleton to leave the lights on and park within 10 feet of the pay phone (App. 93-94).

As Middleton was parking her car, she observed a stranger, later identified as the petitioner, on the phone (App. 94). She also noticed a mint green Honda with a front license plate depicting a rose on a black background (App. 95). After the petitioner finished using the phone, Middleton walked up to the pay phone and attempted to call her boyfriend

but received no answer (App. 95-96). As Middleton turned around, she saw the petitioner in her car holding her keys (App. 96).

The petitioner then asked Middleton if he could take her for a ride (App. 96). Middleton declined, and the petitioner responded by pushing her to the ground, beating her head and face, and telling her to shut up and let him take her for a ride (App. 97). While Middleton tried to flee to her car, the petitioner grabbed her from behind and began choking her (App. 97-98). The petitioner then dragged Middleton to his car and forced her to crawl through the driver's side to the passenger seat, telling Middleton he wanted "to get some of [her] good stuff," which she understood to mean he wanted to rape her (App. 98-99, 100). As the petitioner started driving away, Middleton continued to protest her detention, prompting the petitioner to threaten her life (App. 99). Nearly a mile into their trip, Middleton remembered she had an aunt who lived nearby, and she opened the car door, jumped from the car, ran to her aunt's house, and called 911 (App. 101-03, 143, 147-48).

Upon arriving at Middleton's aunt's house, a deputy from the Charleston County Sheriff's office took Middleton's statement regarding the attack (App. 106-07). Middleton described her assailant as a black male with a fade haircut and gold teeth, wearing a pair of dark denim shorts and a black print t-shirt (App. 106-07, 152). She further described her attacker's car as a mint green Honda with a black front license plate containing a picture of a rose (App. 106). Middleton also added that she had left some of her jewelry in the mint green Honda (App. 111-12). Middleton suffered a variety of bruises, cuts and scratches, and her eye was nearly swollen shut (App. 108-12, 147).

At approximately 1:15 a.m., deputies stopped an individual consistent with Middleton's description driving a mint green Honda (App. 157-58). Deputies also found women's jewelry inside the car (App. 119-23, 159). Specifically, deputies recovered a necklace, a stud earring, and a hoop earring (App. 119-23). Thereafter, the petitioner was arrested. (App. 162).

At the station, Middleton identified the petitioner from a six–man photographic lineup (App. 115, 167). Middleton also confirmed that the jewelry recovered from the mint green Honda was hers and that the Honda was the car used in her attack (App. 119-23). A blood sample would later reveal the blood found on the petitioner's shirt was Middleton's (App. 205).

Following his identification, the petitioner was indicted on charges of kidnaping and assault with intent to commit first degree criminal sexual conduct ("ACSC") (App. 6). He proceeded to trial before the Honorable Daniel E. Martin (App. 1). The petitioner was represented by Melissa W. Gay (App. 1). Following a brief trial, the jury convicted the petitioner on all charges, and he was sentenced to 30 years imprisonment on the kidnaping charge and life without parole ("LWOP") on the ACSC charge (App. 288).

**Direct Appeal**

After his conviction, the petitioner appealed his ACSC sentence, arguing the trial court erred in defining Assault and Battery of a High and Aggravated Nature ("ABHAN") – a lesser-included offense of ACSC – as including the element of sudden heat of passion upon a sufficient legal provocation. See *State v. Heyward*, 564 S.E.2d 379, 381 (S.C. Ct. App. 2002) (agreeing with the petitioner that the trial court erred in defining ABHAN as including sudden heat of passion upon sufficient legal provocation). The Court of Appeals agreed with the petitioner, issuing a published opinion reversing and remanding his ACSC charge.[1] *Id.* at 382. The State then filed for a Writ of Certiorari, which was subsequently denied. See Order Denying Certiorari in #97-GS-10-3806, #97-GS-10-3807. The Remittitur was issued on November 14, 2002. See Remittitur in #97-GS-10-3806, #97-GS-10-3807.

---

[1]The petitioner remains imprisoned pursuant to his kidnaping conviction.

**First PCR and Appeal**

On March 6, 2003, after completion of direct review of his ACSC conviction, the petitioner, filed for post-conviction relief ("PCR"), arguing trial counsel was ineffective during trial and his due process rights were violated when counsel allegedly failed to request an in camera hearing to determine whether the pretrial and in-court identification of the petitioner by Middleton was reliable. The petitioner further maintained that "the photo array was suggestive in that there were no reasonable number of person[s] in the photo array that resembles the [petitioner], thereby making the likelihood of the identification procedure suggestive and unreliable" (App. 305-06). Finally, the petitioner requested the PCR court appoint counsel (App. 311).

The State, in its Return, responded by requesting an evidentiary hearing on the petitioner's ineffective assistance of counsel claim (App. 319). Thereafter, on July 10, 2003, the petitioner, through appointed counsel, filed an Amended Application for PCR adding the following allegations:

(1)    Ineffective assistance of counsel in failing to object to the trial court's alleged misapplication of the law regarding *Miranda* rights (App. 337);

(2)    ineffective assistance of counsel in allegedly failing to request an instruction to the jury that the petitioner's statements could not be considered by the jury unless it determined beyond a reasonable doubt that the petitioner had been advised of his rights and made the statements knowingly, intelligently and voluntarily (App. 338);

(3)    ineffective assistance of counsel in failing to object to the identification of the petitioner by the photo lineup and failing to request an in-camera hearing to determine whether the pre-trial and in-court identifications of the petitioner by Middleton were reliable (App. 338);

(4)    ineffective assistance of counsel in that trial counsel allegedly failed to object to the trial court's failure to adequately charge the jury on the issue of relevance and interpretation of the photo identification (App. 339);

4

(5)     ineffective assistance of counsel in that trial counsel allegedly admitted the petitioner's guilt of a crime, specifically ABHAN, without consulting or obtaining the consent of the petitioner, which allegedly prejudiced both the jury and judge against him (App. 339);

(6)     ineffective assistance of counsel in allegedly failing to properly proffer the testimony of the petitioner for the record by stating to the judge what trial counsel claimed the petitioner would have said, without the petitioner's permission, incorrectly stating the petitioner's position and effectively admitting that the petitioner committed a crime (App. 339);

(7)     ineffective assistance of counsel in that trial counsel allegedly failed to consult the petitioner and fully investigate the petitioner's case when the crime scene was still fresh for examination and instead had only a brief discussion with the petitioner in which she failed to fully explain the petitioner's pending charges (App. 340);

(8)     ineffective assistance of counsel in that trial counsel failed to object to DNA evidence offered by the State or hire an expert to examine the DNA evidence in an attempt to rebut the State's case (App. 340);

(9)     ineffective assistance of counsel in that trial counsel failed to call a single witness in the petitioner's defense who could offer evidence to create a reasonable doubt with respect to the petitioner's guilt (App. 340);

(10)     ineffective assistance of counsel in that trial counsel allegedly failed to conduct an adequate, independent and proper investigation of the scene and the petitioner's case in order to develop and present evidence to create a reasonable doubt to jurors (App. 340);

(11)     ineffective assistance of counsel in that trial counsel allegedly failed to object to the introduction of the 911 call and the State allegedly failed to establish a chain of custody and did not properly authenticate the recording of the 9-1-1 call (App. 341);

(12)     ineffective assistance of counsel in that trial counsel allegedly failed to object to or raise an issue regarding the trial court's impaneling of a jury without questioning potential jurors as to whether they or their immediate family members had ever been a victim of a crime similar to those of which the petitioner was accused (App. 341);

5

(13)    ineffective assistance of counsel in that trial counsel allegedly failed to pursue inconsistencies on the record in the State's case (App. 340-41);

(14)    ineffective assistance of counsel in that trial counsel allegedly failed to object to or bring to the attention of the trial judge that he appeared to be sleeping (App. 342);

(15)    ineffective assistance of counsel in that appellate counsel allegedly failed to appeal the trial court's finding that the petitioner had received a proper *Miranda* warning (App. 342);

(16)    ineffective assistance of counsel in that appellate counsel allegedly failed to appeal the petitioner's kidnaping conviction and failed to consult with the petitioner even once prior to filing his appeal (App. 342);

(17)    ineffective assistance of counsel in that appellate counsel allegedly failed to appeal the trial court's ruling allowing the petitioner to be cross-examined on his prior convictions (App. 343).

On June 15, 2004, an evidentiary hearing was conducted before the Honorable Doyet A. Early, III (App. 366-455).  The petitioner was represented by William B. R. Lewis and Andrea K. St. Amand of Nelson, Mullins, Riley and Scarborough (App. 366).  The State was represented by Adrianne Turner (App. 366).  At the evidentiary hearing, the petitioner failed to present evidence on a variety of claims enumerated in his Amended PCR Application (App. 470).  The PCR court, in its Order of Dismissal, found the petitioner waived all but the following five grounds for relief:

(1)    Trial counsel rendered ineffective assistance in effectively admitting to the jury that the petitioner assaulted Middleton;

(2)    trial counsel was ineffective in failing to introduce medical records supporting the petitioner's contention that he had reduced the speed of the car in an effort to return Middleton to her own car;

(3)    trial counsel was ineffective in failing to object to the introduction of the 911 tape;

6

(4)     trial counsel was ineffective in failing to conduct any investigation into the case, including failing to consult with the petitioner; and

(5)     appellate counsel was ineffective in failing to appeal the petitioner's kidnaping conviction (App. 471).

Following the evidentiary hearing, the PCR court denied relief (App. 456).[2] On August 30, 2004, the PCR court signed an order to that effect (App. 462-83). Addressing the petitioner's first ground for relief, the PCR court found, in light of the evidence, that trial counsel exercised reasonable professional judgment in employing a trial strategy that included conceding that a physical altercation had taken place (App. 476-77). In support of this finding, the PCR court noted that any "theory of defense would have had to include some explanation of how the victim came to have choke marks on her neck and how [the petitioner] came to have the victim's blood on his clothes" (App. 477). The PCR court further stated "this Court finds that [the petitioner] has failed to make the requisite showing of prejudice resulting from any alleged deficiency on the part of Counsel in conceding that [the petitioner] injured the victim" instead concluding that the State presented overwhelming evidence of the petitioner's guilt (App. 477).

Addressing the purported failure of trial counsel to introduce Middleton's medical records to impeach her testimony regarding the speed at which the petitioner's car was traveling, the PCR court found trial counsel's performance objectively reasonable (App. 478-79). Specifically, the PCR court noted that the speed at which the car was traveling was immaterial compared to the fact that Middleton felt the need to jump out of a moving vehicle to escape from the petitioner (App. 478).

---

[2]Prior to receiving the written order, but following the denial of relief, the petitioner filed a notice of appeal (App. 457-58). However, on August 16, 2004, the Supreme Court of South Carolina issued an Order of Dismissal which dismissed the petitioner's appeal without prejudice in light of the fact the PCR court had not issued a final order (App. 460).

The PCR court also found the petitioner's argument that trial counsel should have used Rule 403, SCRE, to attempt to exclude the 911 tape, was meritless (App. 479). The PCR court further noted that the petitioner failed to show that a challenge to the chain of custody of the tape would have been successful (App. 479). In particular, the PCR court explained that the contents of the tape were not unduly prejudicial and that any argument regarding a challenge to the chain of custody would be pure speculation (App. 479). Accordingly, the PCR court denied the petitioner's third ground for relief.

The PCR court also addressed the petitioner's claim that trial counsel failed to conduct an adequate investigation into his case (App. 479-80). Specifically, the PCR court found the petitioner's claim had no merit as trial counsel met with the petitioner multiple times and even visited the crime scene (App. 480). Addressing the petitioner's allegation that counsel failed to consult him at all about his case, the PCR court found the petitioner's testimony "unconvincing" (App. 480).

Finally, the PCR court explained that the petitioner's ineffective assistance of appellate counsel claim was without merit as the notice of appeal actually appealed both of the petitioner's convictions (App. 481). Additionally, the PCR court found it was unlikely that appellate counsel could have raised a better issue on appeal, as the issue raised by counsel resulted in the reversal of the petitioner's ACSC charge (App. 481). Accordingly, the petitioner's application for PCR was denied (App. 482-83).

On September 10, 2004, the petitioner's PCR counsel filed a Rule 59(e), SCRCP, Motion to Alter or Amend claiming the order contained "material misstatements of fact and law" (App. 484). The petitioner's PCR counsel also provided the PCR court with a supporting memorandum of law in which the petitioner argued the PCR court's order erred with respect to the following:

> (1)    the PCR court failed to completely address the petitioner's claim that trial counsel failed to consult with the

8

petitioner regarding her repeated assertions that the petitioner was guilty of assault (App. 486-87);

(2)    the PCR court allegedly failed to address trial counsel's failure to request an instruction to the jury regarding statements allegedly made by the petitioner in violation of *Miranda* (App. 488);

(3)    the PCR court's order, while addressing the prejudicial nature of the 911 tape, failed to find the tape held any probative value whatsoever (App. 488); and

(4)    the PCR court failed to address trial counsel's alleged overall ineffectiveness when reviewing all the facts in their entirety, claiming trial counsel failed to subject the prosecution's case to a meaningful adversarial testing meaning *Strickland*'s prejudice prong should be assumed (App. 488-89).

Pursuant to the petitioner's Rule 59(e) SCRCP, Motion to Alter or Amend, the PCR court held another hearing on April 14, 2005, at the Bamberg County Courthouse (App. 491). The petitioner was again represented by Ms. St. Amand, while the State was represented by Adrianne L. Turner (App. 491).

Following the hearing, the PCR court, on January 30, 2006, issued an order rejecting each of the petitioner's claims made in support of his Rule 59(e), SCRCP Motion to Alter or Amend (App. 491-92). Specifically, the PCR court, with respect to the first allegation, found that trial counsel exercised reasonable trial strategy in including in her defense a concession that a physical altercation occurred (App. 491-92). Again, the PCR court noted that counsel's performance was reasonable as the case required that counsel provide an explanation for Middleton's choke marks and myriad bumps and bruises (App. 492). Addressing the *Miranda* claim, the PCR court found that the petitioner failed to meet his burden of proof in order to establish the claim and therefore dismissed the allegation with prejudice (App. 492). Clarifying its ruling on the 911 tape, the PCR court added the prejudicial nature of the 911 tape did not outweigh its probative value (App. 492). With that, the PCR court denied the petitioner's Rule 59(e), SCRCP motion. (App. 492).

9

On February 27, 2006, the petitioner filed a notice of appeal with the South Carolina Supreme Court (App. 493-94). In his Petition for Writ of Certiorari, the petitioner argued the PCR court erred in denying him relief where trial counsel allegedly conceded the petitioner's guilt to the jury without prior consultation and consent from the petitioner. *See* Petition for Certiorari in #2003-CP-10-0972. The petitioner further argued the PCR court erred in failing to make a presumption of prejudice based upon trial counsel's admitting the petitioner's guilt to the jury without prior consultation or consent. *See* Petition for Certiorari in #2003-CP-10-0972. The petitioner also claimed the PCR court erred in holding the petitioner's trial counsel provided effective assistance of counsel when viewing counsel's actions in totality. See Petition for Certiorari in #2003-CP-10-0972. Finally, the petitioner maintained the PCR court erred in finding appellate counsel provided effective assistance of counsel. *See* Petition for Certiorari in #2003-CP-10-0972.

In its Return, the State argued the PCR court was correct in ruling that trial counsel used valid trial strategy in admitting that a struggle occurred inside the vehicle. *See* Return to Petition for Certiorari in #2003-CP-10-0972. The State also maintained the PCR court correctly concluded that both trial and appellate counsel provided effective assistance of counsel. *See* Return to Petition for Certiorari in #2003-CP-10-0972. On May 29, 2008, the South Carolina Court of Appeals granted certiorari on the petitioner's first question concerning trial counsel's admission of guilt and denied certiorari on the balance of the petitioner's claims. *See* Order by the Court of Appeals in #2003-CP-10-0972.

Subsequently the petitioner filed his brief on July 25, 2008, and the State responded on December 4, 2008. See Brief of Petitioner in #2003-CP-10-0972; Brief of Respondent in #2003-CP-10-0972. The petitioner filed a Reply brief on February 10, 2009. *See* Reply Brief in #2003-CP-10-0972. Following briefing, on November 3, 2009, the Court of Appeals certified the question to the Supreme Court of South Carolina pursuant to Rule 204(b), SCACR. *See* Order by the Supreme Court of South Carolina in #2003-CP-10-0972.

10

Finally, on March 2, 2010, the Supreme Court of South Carolina issued an unpublished, Rule 220(b)(1), SCACR, opinion affirming the PCR court. *Heyward v. State*, No. 2010-MO-004. The Remittitur was issued on March 17, 2010. See Remittitur in #2003-CP-10-0972.

### Second PCR and Appeal

On April 6, 2010, the petitioner filed a second application for PCR (#2010-CP-10-2843) in which he argued the State was required to file a Return to his Amended Application for PCR in the previous action (*see* pet. at 3). Specifically, the petitioner claimed that the State's failure to respond to his amended application in his previous PCR was a due process violation. In addition, the petitioner claimed the State's failure to respond was an equal protection violation and resulted in the State's waiving any defenses which were available to it. According to the petitioner, this PCR is still pending.

### Current Allegations

The petitioner now alleges he is entitled to relief on the following grounds:

(1)    trial counsel was ineffective in allegedly conceding Petitioner's guilt to the jury without prior consultation or consent from Petitioner;

(2)    the PCR court unreasonably applied federal law in failing to apply a presumption of prejudice where trial counsel admitted Petitioner's guilt to the jury without prior consultation or consent;

(3)    the PCR court erred in holding that trial counsel provided Petitioner with effective assistance of counsel when viewing counsel's actions and inactions in totality;

(4)    the PCR court erred in holding that Petitioner's appellate counsel provided effective assistance of counsel; and

(5)    the PCR court's ruling regarding Petitioner's ineffective assistance of trial counsel claim involving the application of *Miranda*, was contrary to clearly established federal law as determined by the Supreme Court of the United States.[3]

---

[3]This ground for relief was added in the petitioner's May 8, 2010, Motion to Amend.

11

On September 28, 2010, the respondent filed a motion for summary judgment. By order filed September 29, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion for summary judgment on November 9, 2010.

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in

12

> "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

As will be set forth below, this court finds that each of the petitioner's grounds for relief fails on the merits.

### Grounds One and Two

The petitioner's first and second grounds for relief are closely related. In his first ground for relief, the petitioner argues the PCR court erred in refusing to find trial counsel ineffective where she admitted the petitioner assaulted the victim and allegedly failed to consult with him concerning such a strategy. To this end, the petitioner states, "the State Courts [sic] made an unreasonable determination of facts in light of the evidence presented in the state court proceeding" (amended pet. at 1, doc. 1-3). In his second ground for relief, the petitioner asserts the PCR court unreasonably applied federal law in failing to apply a presumption of prejudice where trial counsel admitted the petitioner's involvement in an assault without prior consultation or consent (*id.*).

At trial, counsel for the petitioner stated the following during her opening statement:

13

> Because the evidence in this case is that, yes, Ms. Middleton was assaulted on that night. There is not doubt that she was physically assaulted, but she was not sexually assaulted (App. 89)

> Yes, there was an assault of some sort, and it was a physical assault. But it wasn't a sexual assault at all, and there is absolutely no way that he forced her into that car (App. 91).

During her cross examination of the victim, trial counsel asked the following question:

> Because isn't it true that that's where the assault occurred . . . (App. 133).

During her closing argument, trial counsel stated the following:

> Just the fact that she was there and that he was assaulting her maybe physically is not enough to convict him of a sexual battery or an attempt to commit sexual battery (Appt. 247-48).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

The PCR court, both in its Order of Dismissal and in its Order concerning rehearing, found it was necessary for trial counsel to craft a trial strategy that sought to explain the choke marks on Middleton's neck (App. 476-77, 492). Without such an explanation, any defense would lack credibility, especially in light of the evidence presented against the petitioner. As noted in the PCR court's Order of Dismissal, "[The petitioner's]

14

account that the victim received her injuries when she inexplicably jumped out of the car he was driving in no way explains the choke marks on the victim's neck or the presence of victim's blood on his clothes" (App. 477).  Therefore, the PCR court concluded that counsel made a valid strategic decision in attempting to "concentrate her efforts on convincing the jury that [the petitioner] should not be found guilty of [ACSC] as a result of the physical altercation between him and victim rather than flatly denying that [the petitioner] caused at least some of the victim's injuries" (App. 477).

Continuing, the PCR court explained that the petitioner also failed to show prejudice (App. 477-78).  In its order, the PCR court explained that, because the petitioner's PCR action only challenged his kidnaping conviction and as the petitioner's defense to the kidnaping charge was consent, trial counsel's admission that an assault took place was of "questionable applicability" to his conviction for kidnaping (App. 478).

The petitioner, relying on *U.S. v Cronic*, 466 U.S. 648 (1984), contends that counsel's admission that he assaulted the victim entitled him to a presumption of prejudice. See *Cronic*, 466 U.S. at 659 (holding a presumption of prejudice is proper where counsel has failed to subject the prosecution's case to "meaningful adversarial testing").  The State disagrees and argues that the petitioner's argument conflicts with the United States Supreme Court's holding in *Florida v. Nixon*, 543 U.S. 175, 190-91 (2004).  In *Nixon*, the Court declined to apply *Cronic*'s presumption of prejudice where trial counsel in a capital case, without defendant's consent, admitted defendant's guilt as part of his trial strategy. 543 U.S. at 190-91.  The State further argues that while the Court may have, at least in part, focused on the fact *Nixon* was a capital case, the same rationale applies in the case at hand.

In *Nixon*, the Court stated as follows:

> *Cronic* recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was

15

deficient, but also that the deficiency prejudiced the defense. *Cronic* instructed that a presumption of prejudice would be in order in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S., at 658.  The Court elaborated: "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659; *see Bell v. Cone*, 535 U.S. 685, 696-697 (2002) (for *Cronic*'s presumed prejudice standard to apply, counsel's "failure must be complete"). We illustrated just how infrequently the "surrounding circumstances [will] justify a presumption of ineffectiveness" in *Cronic* itself. In that case, we reversed a Court of Appeals ruling that ranked as prejudicially inadequate the performance of an inexperienced, underprepared attorney in a complex mail fraud trial. 466 U.S. at 662, 666.

*Nixon*, 543 U.S. at 190 (parallel citations omitted).

As pointed out by the *Nixon* court, trial counsel in *Nixon*, much like trial counsel here, sought to admit guilt as a means of maintaining credibility with the jury. 543 U.S. at 191-92.  This same strategy was noted by the PCR court here (App. 478-79).  Specifically, the PCR court highlighted trial counsel's predicament in its order by noting that counsel was forced to explain both the choke marks appearing on Middleton's neck and the fact that Middleton's blood was found on the petitioner's shirt (App. 479).  While counsel did admit that an assault took place, counsel did not admit that the petitioner committed either of the charged offenses.  This was clearly for the purpose of maintaining credibility so that counsel could attempt to convince the jury that the petitioner was not guilty of ACSC or kidnaping.  Furthermore, the petitioner only challenges his kidnaping conviction as his ACSC conviction was reversed on direct appeal.  As the PCR court emphasized (App. 477-78), this is important because counsel's admission to an assault taking place within the car is irrelevant to the issue of whether the petitioner kidnaped victim, especially where trial counsel claimed consent as the defense to the kidnaping charge.

16

Based upon the foregoing, as trial counsel did subject the prosecution's case to "meaningful adversarial testing," this court finds that the PCR court correctly applied federal law in using the *Strickland* standard rather than applying *Cronic*'s presumption of prejudice. See *Cronic*, 466 U.S. at 659.  The State court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law, and the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the petitioner's second ground for relief fails.

Moreover, this court agrees with the PCR court's finding that trial counsel's performance was objectively reasonable in light of the evidence adduced at trial. As discussed above, trial counsel was faced with the difficult task of explaining the occurrence of choke marks on the victim's neck and her blood being found on his shirt (App. 478).  The PCR court noted:

> [The petitioner's] account that the victim received her injuries when she inexplicably jumped out of the car he was driving in no way explains the choke marks on the victim's neck or the presence of the victim's blood on his clothes.  Clearly, Counsel made a valid strategic decision to concentrate her efforts on convincing the jury that [the petitioner] should not be found guilty of assault with intent to commit criminal sexual conduct as a result of the physical altercation between him and the victim rather than flatly denying that [the petitioner] caused at least some of the victim's injuries.

> (App. 477; *see also* App. 492).

Accordingly, this court agrees with the State that trial counsel's strategy of admitting that some sort of an assault occurred was a reasonable trial strategy under the circumstances.

Additionally, this court finds the PCR court was correct in concluding that counsel's actions, independent of whether they were objectively reasonable, did not result in prejudice to the petitioner.  As emphasized by the PCR court, the petitioner was

17

challenging a kidnaping conviction, which he claimed was not a kidnaping due to the alleged victim's consent (App. 478). In light of this fact, trial counsel's admission to an assault occurring in the car would have no bearing on the issue of whether the jury believed the petitioner's consent defense and certainly does not amount to an admission of guilt as it relates to the conviction that the petitioner now challenges. Based upon the foregoing, this court finds that the State court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law. Furthermore, the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the petitioner's second ground for relief fails.

### Ground Three

In his third ground for relief, the petitioner argues the PCR court erred in holding that trial counsel provided him with effective assistance of counsel when viewing counsel's actions and inactions in totality. In furtherance of his claim, the petitioner states, "[T]he State Court made an unreasonable determination of facts" (amended pet. at 3). The State points out that the petitioner does not claim the PCR court misapplied federal law in applying *Strickland* or any other United States Supreme Court case. Instead, the petitioner merely asserts the PCR court made an unreasonable determination of the facts. However, the petitioner has failed to explain which facts the PCR court unreasonably interpreted or why they were unreasonably determined. As argued by the State, these allegations are far too vague and conclusory to warrant relief. See *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970) ("The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error."); *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") (overruled on other grounds by *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)). As the petitioner has failed to make the requisite allegations or provide the supporting facts

18

necessary to support his claim, the petitioner cannot carry his burden as to this issue, and this ground for relief fails.

**Ground Four**

In his fourth ground for relief the petitioner claims the PCR court erred in holding that his appellate counsel provided effective assistance of counsel. In support of this allegation, the petitioner asserts, "[T]he State Court made an unreasonable determination of facts" (amended pet. at 3). Again, the petitioner fails to explain which facts were unreasonably interpreted or how the PCR court unreasonably determined such facts. See *Aubut*, 431 F.2d at 689. Moreover, the petitioner's allegations are too conclusory. See *Nickerson*, 971 F.2d at 1136.

Even assuming that the petitioner is referring to the same ineffective assistance of appellate counsel claim addressed in the PCR court's order, the claim fails. In his PCR claim, the petitioner alleged that appellate counsel failed to appeal his kidnaping claim. However, as noted by the PCR court, counsel filed a notice of appeal regarding both of the petitioner's convictions (App. 481). Furthermore, the relevant analysis for determining ineffective assistance of appellate counsel concerning failure to raise viable issues is "whether appellate counsel failed to present significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Generally, the presumption of effective assistance of counsel will be overcome only when the allegedly ignored issues are clearly stronger than those actually raised on appeal. *Id.*

Here, the petitioner was in fact granted relief on his direct appeal. See *State v. Heyward*, 564 S.E.2d 379, 381 (S.C. Ct. App. 2002) (agreeing with the petitioner that the trial court erred in defining ABHAN as including sudden heat of passion upon sufficient legal provocation). The PCR court found as follows on this ground for relief:

> Particularly in light of the fact that Appellate Counsel's efforts resulted in a reversal of the [petitioner's] conviction for assault with intent to commit first degree criminal sexual conduct, this

19

> Court is not convinced that the [petitioner] has established that Appellate Counsel failed to raise viable issues that were clearly stronger than those actually raised on appeal. In particular, this Court finds it unlikely that the [petitioner's] convictions would have been overturned on appeal due to the trial court's ruling that the [petitioner's] 1990 conviction for assault with intent to commit criminal sexual conduct would have been admissible for impeachment purposes had the [petitioner] elected to testify. Likewise, this Court finds that there is little chance the [petitioner's] convictions would have been overturned on the ground the trial court misapplied the law governing the proper advisement of *Miranda* warnings.

(App. 482). As the PCR court found, based upon the record, any claim related to the petitioner's kidnaping conviction was much less likely to be overturned when compared to the trial court's error regarding the ABHAN charge. Based upon the foregoing, this claim fails.

### Ground Five

In his fifth ground for relief, the petitioner alleges: "*Miranda* Violation. The petitioner contends that the State Court [sic] ruling was contrary to clearly established Federal law as determined by the Supreme Court of the United States" (amended pet. at 3). As discussed above with regard to other of the petitioner's grounds for relief, this claim is too vague for the court to grant relief. The petitioner has failed to explain how the PCR court misapplied *Miranda* or the facts that gave rise to this alleged *Miranda* violation. See *Aubut*, 431 F.2d at 689. Moreover, the petitioner's allegations are too conclusory and fail to give supporting facts. See *Nickerson*, 971 F.2d at 1136. Instead, the petitioner simply asserts a *Miranda* violation took place or contends the PCR court misapplied *Miranda*. As argued by the respondent, the petitioner is not entitled to habeas relief where he presents nothing to explain why he is entitled to such relief. Accordingly, this ground for relief also fails.

20

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 28) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

July 20, 2011
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.